# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| DAVID T. HARDY | ) |
| | ) |
|                Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No. 15-1649 (BAH) |
| | ) |
| BUREAU OF ALCOHOL, TOBACCO, | ) |
| FIREARMS AND EXPLOSIVES, *et al.,* | ) |
| | ) |
| | ) |
|              Defendants. | ) |

_____)

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, Defendants Bureau of Alcohol, Tobacco, Firearms, and Explosives; Department of Justice; and Department of Justice Office of Inspector General respectfully move for summary judgment on Plaintiff's claim under the Freedom of Information Act ("FOIA"). This motion is accompanied by a memorandum of law, statement of undisputed material facts, supporting declarations, exhibits, and proposed order.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C. Bar #415793

DANIEL VAN HORN
Chief, Civil Division
D.C. Bar # 924092

By: /s/_____
JOSHUA M. KOLSKY
Assistant United States Attorney
D.C. BAR #993430
Washington, D.C. 20530
Phone: (202) 252-2541
Email: joshua.kolsky@usdoj.gov

*Counsel for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

DAVID T. HARDY                          )
                                        )
                    Plaintiff,          )
                                        )
v.                                      )          Civil Action No. 15-1649 (BAH)
                                        )
BUREAU OF ALCOHOL, TOBACCO,             )
FIREARMS AND EXPLOSIVES, *et al.,*      )
                                        )
                                        )
                    Defendants.         )
_____)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7(h), Defendants respectfully submit this Statement of Undisputed Material Facts in support of Defendants' Motion for Summary Judgment.

1.      On March 18, 2015, the Department of Justice Office of the Inspector General ("OIG") received a Freedom of Information Act request from Plaintiff.  In his request, Plaintiff sought copies of "any statements, surveys, or reports of interviews given to the Justice Department Office of Inspector General in connection with IG Report No. I-2007-006 ('The Bureau of Alcohol, Tobacco, Firearms and Explosives' National Firearms Registration and Transfer Record,' June 2007)." ("NFRTR Report").  The NFRTR Report was prepared by the OIG's Evaluation and Inspections Division.  Declaration of Deborah M. Waller ("Waller Decl.") ¶ 3.

2.      The OIG acknowledged Plaintiff's request by letter dated March 18, 2015, and assigned him FOIA request number [15-OIG-149].  Waller Decl. ¶ 4.

3.      On August 27, 2015, the OIG prepared a response letter to Plaintiff's request informing Plaintiff that the documents were exempt from disclosure pursuant to the FOIA, 5

U.S.C. 552(b)(5), which protects documents that reflect the deliberative processes of the OIG. Waller Decl. ¶ 5.

4.      On December 7, 2015, the OIG sent Plaintiff a letter notifying him that due to a clerical error, the original response letter had not been mailed and provided him with that original response letter dated August 27, 2015.  Waller Decl. ¶ 6.

5.   On or about January 6, 2016, the OIG obtained all of statements, surveys, and reports of interviews ("work papers") in connection with the NFRTR Report and initiated a review of the documents.   Upon reviewing the work papers, the OIG determined that portions of the records that were directly quoted in the final report could be segregated and released without compromising the deliberative processes of the OIG.   On February 26, 2016, the OIG provided such records to Plaintiff's attorney.  Waller Decl. ¶ 9.

6.   The records at issue here fall into the following three categories: (1) records of interviews and notes of telephone interviews, (2) survey results, a draft survey, survey data summaries, and survey data analysis, and (3) miscellaneous work papers, including indexes of materials and interviews; and summaries of a document and emails that were reviewed.  Pelletier Decl. ¶ 5.

7.   The records of interviews and notes of telephone interviews at issue here document information that line-level inspectors believed was relevant to the review that resulted in the final NFRTR Report.  The information contained in the notes illustrates (1) the specific topics that the inspectors chose to focus on in developing their findings, and (2) what information inspectors chose to communicate to their supervisors.  The withheld information was created before the OIG issued its final NFRTR report, and reflects the thoughts of the author and internal communications about OIG findings still in development.  Pelletier Decl. ¶ 6.

8.   As part of its review of the NFRTR, the OIG issued a survey to ATF Industry Operations Investigators, a copy of which was included in Appendix II to the final NFRTR report.  The draft survey and survey data summaries and data analysis document the OIG's process of creating the survey and reviewing the survey results.   Disclosure of these work papers would create confusion by providing the public with information that may not have ultimately been the grounds for the OIG's findings.  These documents were used to determine what information should be included in the final report.  The documents illustrate the OIG's process of selecting and analyzing data to formulate the findings published in the final report.  Pelletier Decl. ¶ 7.

9.   The remaining documents at issue here consist of a work paper index, which is an OIG-generated log of all interviews and other data collected in the OIG's review of the NFRTR; an interview work paper, which is a spreadsheet analyzing interview responses; a summary of an email chain which the OIG reviewed in the course of preparing the NFRTR Report; and a summary of a document containing information the OIG reviewed in the course of preparing the NFRTR Report.  Each of these documents is an internal, OIG-generated summary of information that was created in the course of preparing the final NFRTR Report.  The log of materials reflects what information the OIG was weighing and considering in developing its final report.  The spreadsheet analyzing interview responses reflects the OIG's thought process regarding what information should or should not be included in the final report.  The email and document summaries reflect what information the OIG deemed possibly relevant to its findings.  Pelletier Decl. ¶ 8.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney

D.C. Bar #415793

DANIEL VAN HORN
Chief, Civil Division
D.C. Bar # 924092

By:  /s/_____
JOSHUA M. KOLSKY
Assistant United States Attorney
D.C. BAR #993430
Washington, D.C. 20530
Phone:  (202) 252-2541
Email:  joshua.kolsky@usdoj.gov

*Counsel for Defendant*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

DAVID T. HARDY                                          )
                                                        )
                              Plaintiff,                )
                                                        )
v.                                                      )          Civil Action No. 15-1649 (BAH)
                                                        )
BUREAU OF ALCOHOL, TOBACCO,                             )
FIREARMS AND EXPLOSIVES, *et al.,*                      )
                                                        )
                                                        )
                              Defendants.               )
_____)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

       Defendants respectfully move for summary judgment in this Freedom of Information Act

case.  Defendants have satisfied all of their obligations with respect to Plaintiff's FOIA request.

Defendants have conducted adequate searches for responsive records and have produced the

responsive records to Plaintiff.  Moreover, Defendants have properly applied FOIA exemptions

to withhold portions of the released records, as described in the attached declarations of Deborah

M. Waller and Nina Pelletier.  Because no genuine disputes of material fact exist, Defendants

respectfully request that the Court grant their motion for summary judgment and dismiss

Plaintiff's Complaint with prejudice.[1]

_____

[1] Defendant ATF also produced records in response to Plaintiff's FOIA request.  Plaintiff has
stated that he is satisfied with ATF's production so that production is not further addressed
herein.

## FACTUAL BACKGROUND

Defendants hereby incorporate their Statement of Undisputed Material Facts, the declarations of Deborah M. Waller and Nina Pelletier, and the exhibits referenced therein.

## LEGAL STANDARDS

### I.   FOIA

The FOIA requires federal agencies to release all records responsive to a request for production unless a specific exemption is applicable.  *See* 5 U.S.C. § 552(a)(3)(A),(4)(B) and 5 U.S.C. § 552(b).  When a FOIA requester properly exhausts his administrative remedies, he may file a civil action challenging an agency's response to its request.  *See* 5 U.S.C. § 552(a)(4)(B); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004).  Once such an action is filed, the agency generally has the burden of demonstrating that its response to the plaintiff's FOIA request was appropriate.  *See id*. at 678.

### II.   Federal Rule of Civil Procedure 56

Summary judgment may be granted where "pleadings and discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  A material fact is one that is capable of affecting the outcome of the litigation.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the non-moving party," *id*., as opposed to evidence that "is so one-sided that one party must prevail as a matter of law."  *Id*. at 252.  A court considering a motion for summary judgment must draw all "justifiable inference" from the evidence in favor of the non-moving party.  *Id*. at 255.  The non-moving party, however, must do

more than merely establish some "metaphysical doubt"; rather, that party must come forward with "specific facts" demonstrating a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 586-87 (1986).

"Summary judgment is the preferred procedure for resolving FOIA disputes." *Kaminsky v. NASA*, 2010 WL 276184, at *5 (E.D.N.Y. Jan. 19, 2010); *see also Brayton v. Ofc. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). The agency "bears the burden of proving the applicability of claimed exemptions." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011). The burden may be satisfied by declaration(s) and/or indices detailing the reason(s) that a FOIA exemption applies and describing the materials withheld. *See e.g., id.*; *Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union*, 628 F.3d at 619.

"Summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013). "An agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Am. Civil Liberties Union*, 628 F.3d at 619 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment, plaintiff must present some objective evidence that would enable the Court to find he is entitled to relief.  In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure.  *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dep't of Justice,* 627 F. 2d 365, 368 (D.C. Cir. 1980).

The declarations filed herein and attached exhibits demonstrate that the OIG met its obligations under the FOIA and establish that there are no genuine issues as to any material fact in this case.  Specifically, the OIG has established that the searches conducted were reasonable and that the records withheld were withheld pursuant to applicable FOIA exemptions.

## ARGUMENT

### I.     The OIG Performed a Reasonable Search

Under the FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).  Here, the adequacy of the search is not in question.  In his FOIA request, Plaintiff requested any "statements, surveys, or reports of interviews given to the Justice Department office of the Inspector General in connection with IG Report No. I-2007-006 ('The Bureau of Alcohol, Tobacco, Firearms and Explosives' National Firearms Registration and Transfer Record,' June 2007)."  On or about January 6, 2016, Ms. Waller obtained from the OIG's Evaluation and Inspections Division all statements, surveys, or reports of interviews connected with the NFRTR Report, totaling 60 documents, and initiated a review of the documents.  Waller Decl. ¶ 7.  The OIG reviewed each document and identified any portion that was directly quoted in the final

report.  *Id.*  On February 26, the OIG produced the portions of the documents that were directly quoted in the final report that the OIG determined could be segregated and released without compromising its deliberative processes.  *Id.*  Accordingly, the OIG conducted a reasonable search for responsive records.

## II.       The OIG Properly Applied FOIA Exemptions

As explained below and as detailed in the Waller and Pelletier declarations, the OIG properly relied on various FOIA exemptions to withhold certain information in response to Plaintiff's request.   Once the Court determines that an agency has released all non-exempt material, it has no further judicial function to perform under the FOIA and the FOIA claim is moot.  *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008).  Such is the case here.

### A.  The OIG Properly Withheld Information Pursuant to Exemption 5

#### 1.  General Legal Standards for Exemption 5

The OIG withheld certain documents in their entirety, and redacted other documents in part, pursuant to Exemption 5 of the FOIA.  Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the Agency."  5 U.S.C. § 552(b)(5).  This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege and the deliberative process privilege. *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 (1975); *see Judicial Watch, Inc. v. Dep't of Justice,* 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Intern. Corp.* v. *DOJ,* 235 F.3d 598, 601 (D.C. Cir. 2001).

Documents covered by the deliberative process privilege and exempt under Exemption 5 include those "'reflecting advisory opinions, recommendations and deliberations comprising part

of a process by which governmental decisions and policies are formulated.'"  *Sears, Roebuck,*

421 U.S. at 150 (quoting *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena,* 40 F.R.D. 318, 324

(D.D.C. 1966)); *see McKinley I,* 744 F. Supp. 2d at 137-38.   As the Supreme Court has

explained:

> The deliberative process privilege rests on the obvious realization that officials
> will not communicate candidly among themselves if each remark is a potential
> item of discovery and front page news, and its object is to enhance the quality of
> agency decisions by protecting open and frank discussion among those who make
> them within the Government.

*Department of the Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8-9 (2001)

(internal quotation marks and citations omitted).

The deliberative process privilege is designed to prevent injury to the quality of agency

decisions by (1) encouraging open, frank discussions on matters of policy between subordinates

and superiors; (2) protecting against premature disclosure of proposed policies before they are

adopted; and (3) protecting against public confusion that might result from the disclosure of

reasons and rationales that were not in fact ultimately the grounds for an agency's decision.  *See*

*Sears*, 421 U.S. at 151-53; *Coastal States Gas Corp. v. US. Dep't of Energy*, 617 F.2d 854, 866

(D.C. Cir. 1980); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of*

*Homeland Security,* 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Group, Inc. v. IRS*, 698 F.

Supp. 2d 66, 81 (D.D.C. 2010). Examples of documents covered by the deliberative process

privilege include: notes, recommendations, draft documents, proposals, suggestions, advisory

opinions and other documents such as email messages, that reflect the personal opinions of the

author rather than the policy of the agency or the give and take of the decision-making process.

*See Bloomberg, L.P. v. U.S. Securities and Exchange Commission,* 357 F. Supp. 2d 156, 168

(D.D.C. 2004).

To invoke the deliberative process privilege, an agency must show that the exempt document is both pre-decisional and deliberative. *Access Reports v. U.S. Dep't of Justice,* 926 F.2d 1192, 1194 (D.C. Cir. 1991); *Coastal States Gas,* 617 F.2d at 868; *Tax Analysts v. IRS,* 117 F.3d 607, 616 (D.C. Cir. 1997). For a document to be pre-decisional, it must be antecedent to the adoption of an agency policy. *See Jordan v. US. Dep't of Justice,* 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc); *see also In re Sealed Case,* 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield documents that simply state or explain a decision the government has already made[.]"). To show that a document is pre-decisional, however, the agency need not identify a specific final agency decision; it is sufficient to establish "'what deliberative process is involved, and the role played by the documents at issue in the course of that process.'" *Heggestad v. United States Dep't of Justice,* 182 F. Supp. 2d 1, 7 (D.D.C. 2000) (quoting *Coastal States Gas*, 617 F.2d at 868); *see Gold Anti-Trust Action Committee v. Board of Governors ("GATA"),* 2011 U.S. Dist. LEXIS 10319, at *22 (D.D.C., Feb. 3, 2011) ("even if an internal discussion does not lead to adoption of a specific government policy, its protection under Exemption 5 is not foreclosed as long as the document was generated as part of a definable decision-making process.").

A document is "deliberative" if it "'reflects the give-and-take of the consultative process.'" *McKinley I,* 744 F. Supp. 2d at 138 (quoting *Coastal States Gas,* 617 F.2d at 866). Thus, "'pre-decisional materials are not exempt merely because they are predecisional; they also must be part of the agency give-and-take of the deliberative process by which the decision itself is made.'" *Jowett, Inc.* v. *U.S. Dept. of the Navy,* 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn* v. *Rosen,* 523 F.2d 1136, 1144 (D.C Cir. 1975)). The privilege protects factual material if it is "inextricably intertwined" with deliberative material, *FP L,* 698 F. Supp. 2d at 81, or if

disclosure "would 'expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Quarles* v. *Dep't of Navy,* 893 F.2d 390, 392 (D.C. Cir. 1990)) (quoting *Dudman Communications Corp.* v. *Dep't of Air Force,* 815 F.2d 1565, 1568 (D.C. Cir. 1987)). "The 'key question' in identifying 'deliberative' material is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports,* 926 F.2d at 1195 (quoting *Dudman*, 815 F.2d at 1567-68).

### 2. The Documents Withheld Under Exemption 5 Are Pre-Decisional and Deliberative

In this case, the OIG identified 60 responsive documents and has produced all material from these documents that is directly cited to in the final NFRTR Report.  Waller Decl. ¶ 7.  The OIG has asserted Exemption 5 over the remaining material, which consists of interview notes; a draft survey, survey results, survey data summaries, and survey data analysis; work papers, including indexes of materials and interviews; and summaries of a document and emails that were reviewed.  Declaration of Nina S. Pelletier ("Pelletier Decl.") ¶ 5.  All of this material was gathered and reviewed in connection with the OIG's review of the NFRTR, the results of which were published in the OIG's final report.   As such, the portions of the documents that have been withheld are pre-decisional and deliberative and are, therefore, covered by the deliberative process privilege.  Moreover, in view of the unique mission and function of the OIG, acting as an oversight entity for the entire DOJ, disclosure of work papers such as those at issue here would undermine the OIG's ability to gather information through interviews about Department programs and operations because it would chill the open, frank discussion between OIG inspectors, who are the overseers and therefore akin to superiors, and Department employees

who are obligated by DOJ regulation and order to cooperate with OIG audits and inspections and are, therefore, in a subordinate role to the auditors and inspectors.

The records of interviews and notes of telephone interviews at issue here consist of notes that OIG inspectors took when interviewing DOJ employees and industry representatives to gather information the OIG inspectors deemed relevant to the review of the NFRTR.  Pelletier Decl. ¶ 6.  In addition to documenting information, these notes were also used as a means for line-level inspectors to communicate their preliminary findings to supervisors in the process of developing the OIG's final report.  *Id.*  "The underlying purpose of the deliberative process privilege is to ensure that agencies are not forced to operate in a fish bowl," *Moye et al. v. Nat'l Railroad Passenger Corp.*, 376 F.3d 1270, 1278 (11th Cir. 2004), and disclosure of the interview notes at issue here would lead to such a result.  Pelletier Decl. ¶ 4.  Moreover, the OIG's mission would be hampered if DOJ employees were reluctant and not forthcoming, and industry representatives declined outright to speak with the OIG, out of fear that their raw comments would be subjected to public scrutiny, or if line-level inspectors could not engage in open and frank communication with supervisors and decision-makers about their findings out of similar fears.  *See Moye*, 376 F.3d at 1281; *Bloomberg, L.P.*, 357 F.Supp.2d at 169.

Further, the notes at issue here document information that line-level inspectors believed was relevant to the NFRTR review and, though some such notes are factual in nature, the information contained in the notes sheds light on the deliberative process at work in formulating the OIG's findings because it illustrates (1) the specific topics that the inspectors chose to focus on in developing their findings, and (2) what information inspectors chose to communicate to their supervisors.  The withheld information is pre-decisional because it was created before the OIG issued its final NFRTR report, and is deliberative because it reflects the thoughts of the

author and internal communications about OIG findings still in development.  *See Moye,* 376 F.3d at 1281; *Bloomberg, L.P.*, 357 F.Supp.2d at 169.  Accordingly, the records of interviews and notes of telephone interviews are exempt from disclosure under the FOIA.

The survey results, draft survey, survey data summaries, and survey data analysis at issue here are similarly pre-decisional and deliberative.  As part of its review of the NFRTR, the OIG issued a survey to ATF Industry Operations Investigators, a copy of which was included in Appendix II to the final NFRTR report.  *See* Exhibit A hereto, NFRTR Rpt., App. II.  Any information from the survey results that was directly quoted in the final NFRTR report has been produced.  Waller Decl. ¶ 7.  All other survey results referenced in the final report were presented in a digested and anonymized form.  Disclosure of the complete survey results, in combination with the final report, would illustrate the deliberative process the OIG engaged in to determine what information was reliable and relevant to the findings in the final report.  The draft survey and survey data summaries and data analysis, which document the OIG's process of creating the survey and reviewing the survey results, are also deliberative material.  Disclosure of these work papers would create confusion by providing the public with information that may not have ultimately been the grounds for the OIG's findings.  Indeed, the final report clearly references data from the survey that is relevant to the findings.  To disclose this data in its entirely would simply confuse the public regarding the findings in the OIG's final report. *See Sears*, 421 U.S. at 151-53 (finding that the deliberative process privilege is designed to prevent injury to the quality of agency decisions by, among other things, protecting against public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision).  These documents are predecisional because they were used to determine what information should be included in the final report.  The

documents are deliberative because they illustrate the OIG's process of selecting and analyzing data to formulate the findings published in the final report.   Accordingly, the survey results, draft survey, and survey data summaries and analysis are exempt from disclosure under the FOIA.

Similarly, the remaining work papers at issue here are also protected by the deliberative process privilege.  These documents consist of a work paper index, which is an OIG-generated log of all interviews and other data collected in the OIG's review of the NFRTR; an interview work paper, which is a spreadsheet analyzing interview responses; a summary of an email chain which the OIG reviewed in the course of preparing the NFRTR Report; and a summary of a document containing information the OIG reviewed in the course of preparing the NFRTR Report.  Pelletier Decl. ¶ 8.  Each of these documents is an internal, OIG-generated summary of information that was created in the course of preparing the final NFRTR Report.  *Id.*  The log of materials is pre-decisional and deliberative because it reveals the OIG's decision-making process by disclosing the information it was weighing and considering in developing its final report.  The spreadsheet analyzing interview responses provides a clear window into the OIG's thought process regarding what information should or should not be included in the final report.  Similarly, the email and document summaries shed light on what information the OIG deemed potentially relevant to its findings.  As stated above, any information in these documents that was directly cited in the final report was produced to Plaintiff.  Waller Decl. ¶ 7.  The remaining material is pre-decisional and deliberative and, is therefore exempt from disclosure under the FOIA.

Several courts have affirmed an OIG's assertion of the deliberative process privilege over the work papers underlying final OIG reports.  For example, in *ACLU v. DHS*, 738 F.Supp.2d 93

(D.D.C. 2010), the DHS OIG withheld work papers, including "memoranda of record" which contained information the OIG inspector deemed important to document, such as impressions, demeanor of witnesses, additional leads or information proposed, and preliminary conclusions. *Id*. at 108.  The court held that the DHS OIG properly withheld information that would "identify the interviewee or reveal the mental processes of the OIG investigators because the investigators chose to include those facts in the report."  *Id*. at 109.  Moreover, the DHS OIG's reliance on the deliberative process privilege "was properly invoked so as not to 'discourage the candid exchange of ideas, analyses, and perspectives that are required in order for OIG to conduct a thorough, comprehensive, and independent inspection or audit.'"  *Id*. at 110.

In a similar context, the court in *Bloomberg, L.P. v. SEC*, 357 F.Supp.2d 156 (D.D.C. 2004), found that notes taken by SEC officials in meetings with entities the SEC regulates are protected by the deliberative process privilege.  The court reasoned that "it would severely undermine the SEC's ability to address such [regulatory] issues if meeting participants did not feel at liberty to engage in an open discussion with the agency regarding self-regulatory responses and potential rules that might be adopted by the agency."  *Id*. at 169.  The notes at issue were both deliberative even if factual in nature: "the D.C. Circuit has clarified that '[t]o the extent that predecisional material, even if in factual form, reflects an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5.'"  *Id*.

In *Moye*, the Eleventh Circuit reached a similar conclusion when it found that Amtrak OIG audit papers, including notes, were exempt from the FOIA.  The court noted that "[t]he underlying purpose of the deliberative process privilege is to ensure that agencies are not forced to operate in a fish bowl," and explained that "while it is certainly true that FOIA's purpose is to

encourage disclosure, it is equally true that Amtrak's OIG serves a valid public purpose and that this purpose would be hampered if lower level auditors declined to engage in open and frank discussions with supervisors and decision-makers for fear that their comments would be subjected to public scrutiny . . . .  Amtrak's OIG cannot fulfill these duties and further these policies if the lower level staff auditors' communications with supervisors and decision-makers are chilled by the fear of having their comments made public."  376 F.3d at 1278, 1281.

Likewise, here, the OIG generated working documents must be considered in the context of the OIG's mission, which is to detect waste, fraud, abuse, and misconduct within the DOJ.  To accomplish this oversight role, the OIG relies on the candid exchange of information between, among others, DOJ employees and OIG inspectors and auditors.  Indeed, the Inspector General Act recognizes the need for confidentiality to carry out its mission by requiring that the IG "shall not, after receipt of . . . information from an employee, disclose the identity of the employee without the consent of the employee, unless the Inspector General determines such disclosure is unavoidable during the course of the investigation."  IG Act § 7, and interviewees in audits and inspections are routinely told their interviews are confidential.  Requiring the OIG to produce all of its working papers, which generally document the substance of information gathered by interviews of DOJ employees and others, would hamper the OIG's ability to carry out its mission because it would dissuade or chill employees from offering their candid assessments out of fear that the information they provide may be made public or accessible by their supervisors, about which the interviewed employees may have been critical.  Pelletier Decl. ¶¶ 2, 4.  Even if identities are not explicitly revealed, the substance of a complaint or information that is provided to the OIG can, in many instances, be tied or traceable to a particular individual, or interviewees may reasonably perceive that it may be, and, therefore, the information itself must be protected.

*Id.* The fact that a relatively small number of Department employees were interviewed as part of the inspection at issue here increases the chance that disclosure of the interview notes or survey results underlying the report could lead to the identification of individuals who provided information to the OIG. *See Moye*, 376 F.3d at 1281.

## B. The OIG Properly Withheld the Identity of OIG Interviewees Pursuant to Exemptions 3 and 6

Exemption 3 protects from disclosure material that is "specifically exempted from disclosure by statute," thereby incorporating the protections of other shield statutes. 5 U.S.C. § 552(b)(3). In this proceeding, the OIG has invoked the Inspector General Act § 7, which recognizes the need for confidentiality to carry out its mission by requiring that the IG "shall not, after receipt of . . . information from an employee, disclose the identity of the employee without the consent of the employee . . . ." IG Act § 7; Waller Decl. ¶ 11. Confidentiality is necessary for the OIG to effectively perform its mission because the OIG relies on its employees to be candid and forthcoming, and if identities were revealed or readily discernible, employees' willingness to speak candidly would be chilled and the OIG's function would be undermined. Without this confidentiality provision, the public would lose the benefit of OIGs serving as watchdogs, ensuring that government agencies are operating efficiently, and that waste, fraud, and abuse are identified and remedied. The sole issue for decision regarding the applicability of Exemption 3 "is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage." *Morley v. CIA,* 508 F.3d 1108, 1126 (D.C. Cir. 2007). The identities of the DOJ employees that were interviewed during the review of the NFRTR are clearly protected by the IG Act confidentiality provision. As such, the OIG has properly invoked Exemption 3 to protect their identities. Importantly, even if identities are not explicitly revealed, the substance

of a complaint or information that is provided to the OIG can, in many instances, be tied or traceable to a particular individual, and, therefore, the information itself must also be protected.

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *see also Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual."); *Gov't. Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105-06 (D.D.C. 2010).  In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004).  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier*, 164 F.3d at 47 (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)) (alterations in original).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).

Here, the OIG invoked Exemption 6 to withhold identifying information regarding the names and identifying information of DOJ employees and industry representatives who provided

information in connection with the OIG review of the NFRTR.   Waller Decl. ¶ 12.   As mentioned above, even if identities are not explicitly revealed, the substance of a complaint or information that is provided to the OIG can, in many instances, be tied or traceable to a particular individual, and, therefore, the information itself must also be protected.  The DOJ employees and industry representatives who provided information to the OIG maintain a strong privacy interest in this information because its release could subject them to harassment, embarrassment, or unwanted public attention.  In contrast, Plaintiff has not identified a public interest, nor is there any, that would be served by the disclosure of this information.   Because there is no countervailing public interest that can overcome the privacy interest of these individuals, the OIG properly redacted their identifying information pursuant to Exemption 6.  *See Beck,* 997 F.3d at 1494 (finding that when there is no public interest at all, the court "'need not linger over the balance; something outweighs nothing every time'") (quoting *Nat'l Ass'n of Retired. Fed. Employees v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

### III.    The OIG Complied with FOIA's Segregability Requirement

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that

they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  Here, where non-exempt information could be segregated from exempt information, the OIG segregated and disclosed the non-exempt information.  Waller Decl. ¶¶ 7; 13.  In sum, the OIG has established, with reasonable specificity, that responsive documents were released in full or in part after a careful determination that there were no further reasonably segregable portions appropriate for release.  Therefore, the Court should find the OIG has properly complied with its duty to segregate exempt from non-exempt information in the processed records.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court grant summary judgment in Defendants' favor.

Respectfully submitted,

CHANNING D. PHILLIPS
United States Attorney
D.C. Bar #415793

DANIEL VAN HORN
Chief, Civil Division
D.C. Bar # 924092

By:  /s/_____
JOSHUA M. KOLSKY
Assistant United States Attorney
D.C. BAR #993430
Washington, D.C. 20530
Phone:  (202) 252-2541
Email:  joshua.kolsky@usdoj.gov

*Counsel for Defendants*