UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID T. HARDY                ) | |
|                Plaintiff,    ) | |
| v.                            ) | Civil Action No. 15-1649 (BAH) |
| BUREAU OF ALCOHOL, TOBACCO,   ) | |
| FIREARMS AND EXPLOSIVES, *et al.*, ) | |
|                Defendants.   ) | |

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, Plaintiff David T. Hardy hereby cross-moves for summary judgment against Defendant Office of Inspector General.  As grounds therefor, Plaintiff respectfully refers the Court to the accompanying Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts and Statement of Material Facts in Support of Cross-Motion for Summary Judgment and accompanying exhibits hereto.

Plaintiff agrees that Summary Judgment is appropriate as to Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives ("BATFE") as it has finally complied with Plaintiff's FOIA request, although litigation was required before BATFE complied with the FOIA.

A proposed order is attached.

By:   /s/ Stephen D. Stamboulieh
       Stephen D. Stamboulieh

Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
DC District Court Bar# MS0009


Alan Beck
Attorney at law
2692 Harcourt Drive
San Diego, CA 92103
Tel: 619-905-9105 (Cell)
*Admitted pro hac vice
*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID T. HARDY )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>BUREAU OF ALCOHOL, TOBACCO, )<br>FIREARMS AND EXPLOSIVES, *et al.*, )<br>)<br>)<br>    Defendants. ) | Civil Action No. 15-1649 (BAH) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS AND PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 7.1(h), Plaintiff respectfully submits this response to Defendants' Statement of Undisputed Material Facts and Plaintiff's Statement of Material Facts in Support of Cross-Motion for Summary Judgment:

**I. Plaintiff's Response to Defendants' Statement of Undisputed Material Facts**.

1. Not in dispute.

2. Not in dispute.

3. No basis to dispute.

4. Not in dispute.

5. Not in dispute.

6. Not in dispute.

7. Disputed to the extent that this statement includes a question of law and not one of fact.

3

8. Disputed to the extent that this statement includes a question of law and not one of fact.

9. Disputed to the extent that this statement includes a question of law and not one of fact.

II. **Plaintiff's Statement of Material Facts Not in Dispute in Support of Cross-Motion for Summary Judgment**

1. The Office of Inspector General ("OIG") received Plaintiff's FOIA request on March 18, 2015. See Declaration of Deborah Waller, Docket #22-2, ¶3.

2. The OIG admits it drafted a letter on August 27, 2015 claiming documents were exempt from production under 5 U.S.C. 552(b)(5), but does not claim it ever made a search for these documents, nor does it claim that it attempted to segregate and release any documents. *Id*. at ¶5.

3. Plaintiff did not receive this letter until after litigation commenced. *Id*. at ¶6.

4. It was not until January 6, 2016 that Waller "obtained from the OIG's Evaluation and Inspections Divisions all statements, surveys, and reports of interviews…" *Id*. at ¶7. From Waller's declaration, it is clear this is the first time a review of the material requested was peformed, as she stated, "Upon reviewing the documents, my office determined that portions of the records that were directly quoted in the final report could be segregated and released without compromising the deliberative processes of the OIG." *Id*.

5. On or about February 29, 2016, OIG produced approximately forty pages of highly redacted responsive documents. These are attached as Exhibit "A."

6. OIG provided its initial *Vaughn* index on March 14, 2016.

7. OIG's *Vaughn* index disclosed that the OIG located approximately 511 potentially

responsive records.

8. On March 20, 2016, undersigned counsel for Plaintiff submitted the attached letter to counsel for OIG setting forth objections to OIG's Vaughn index.  See Exhibit "B."

9. OIG provided an amended *Vaughn* index, filed with the Motion for Summary Judgment, on August 29, 2016, and for the first time claimed exemption b(3) for the majority of withheld documents.

10. The amended *Vaughn* index drops the b(6) exemption for document numbers 0489-0490; document numbers 0502-0504; document numbers 0505-0507; document numbers 0508-0511.

11. The OIG performed a reasonable search.

12. The identity of the providers of information under Exemptions 3 and 6 can be redacted, however, OIG has waived this Exemption to the extent it relates to NFATCA (National Firearm Act Trade Collectors Association).

Dated: October 28, 2016.

By: /s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
Stambouliéh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
DC District Court Bar# MS0009

Alan Beck
Attorney at law
2692 Harcourt Drive
San Diego, CA 92103
Tel: 619-905-9105 (Cell)
*Admitted pro hac vice

*Counsel for Plaintiff*

5

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID T. HARDY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 15-1649 (BAH) |
| ) | |
| BUREAU OF ALCOHOL, TOBACCO, ) | |
| FIREARMS AND EXPLOSIVES, *et al.*, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff David T. Hardy, by counsel, respectfully submits this Memorandum in Opposition to OIG's Motion for Summary Judgment and in Support of Plaintiff's Cross-Motion for Summary Judgment.

**INTRODUCTION**

Defendant Office of Inspector General ("OIG") has unlawfully withheld information from Plaintiff concerning Plaintiff's Freedom of Information Act ("FOIA) request.   This Court should so find and order production of withheld material in this FOIA lawsuit.

### I. Factual Background

Plaintiff incorporates his statement of undisputed material facts and the exhibits referenced herein.

### II. Legal Standards

Plaintiff agrees with Defendants that the Legal Standards regarding FOIA and Summary

6

Judgment correctly frame the law at issue, and Plaintiff adopts those paragraphs as if fully set herein.  Plaintiff disagrees with Defendants' last paragraph of that section that stated OIG met its obligations under FOIA and disputes that there are no genuine issues as to any material fact in this case and that the records were withheld pursuant to applicable FOIA exemptions.

### III.   Argument

As an initial matter, Plaintiff states to the Court that he does not dispute that the OIG performed a reasonable search.  Nor does Plaintiff dispute that Exemptions 3 and 6 protect the privacy of individuals, and thus, identities can be properly redacted.  However, Plaintiff asserts that Defendants waived the Exemption 6 to the extent it relates to NFATCA (National Firearm Act Trade Collectors Association) as the production provided by the OIG (and indeed the OIG's report) specifically references NFATCA.  Specifically, on Page 18 of the documents released by the OIG, Question No. 3 states: "Please describe all the ways the NFATCA interacts with ATF (issues and which personnel) (many redactions) … we cannot emphasize enough the need for funding…"  See Exhibit "A."

Plaintiff challenges OIG's withholding of documents under Exemption 5.  "[U]nder FOIA Exemption 5, pursuant to which an agency need not disclose inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency. 5 U.S.C. § 552(b)(5). Exemption 5 thus protects documents that would be unavailable to an opposing party through discovery in civil litigation.  *See U.S. v. Weber Aircraft Corp.*, 465 U.S. 792, 800, 104 S.Ct. 1488, 79 L.Ed.2d 814 (1984); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185 (D.C.Cir.1987) (Exemption 5 'unequivocally' incorporates 'all civil discovery rules'). Documents that fall within the attorney-client privilege,

7

the attorney work-product privilege, and the deliberative-process privilege are thus exempt from disclosure. *See NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 148–49, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 862 (D.C.Cir.1980)." *Natl. Whistleblower Ctr. v. Dept. of Health and Human Services*, 849 F. Supp. 2d 13, 36–37 (D.D.C. 2012) (internal punctuation omitted).

"A district court may grant summary judgment to the government in a FOIA case only if the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed… Because only the agency knows the substance of the withheld information, the agency affidavits have immense significance in a FOIA case. Both the court and the requester must look to the affidavits for an explanation of the agency's decision to withhold information. Consequently, an affidavit that contains merely a categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate. *PHE, Inc. v. Dept. of J*., 983 F.2d 248, 250 (D.C. Cir. 1993) (punctuation and additional citations omitted).

### A. The OIG Improperly Withheld Information Pursuant to Exemption 5

OIG withheld the bulk of information, records of interviews with various individuals or survey data, on the basis of Exemption 5 because it "contains deliberative, predecisional communications."  However, the deliberative process privilege may not be used to withhold factual information ordinarily available in discovery merely because the facts are contained within deliberative documents. *EPA v. Mink*, 410 U.S. 73, 91 (1973).  While there are exceptions to this rule, none apply here. *See Montrose Chemical Corp. v. Train*, 491 F.2d 63

(DC Cir. 1974) (facts can be withheld if they were selected from a larger group of facts as a part of the deliberation); *Horowitz v. Peace Corps*, 428 F.3d 271, 277 (DC Cir. 2005) (facts may be withheld if they are so integrated into the deliberation that revealing the fact would reveal the substance of the deliberations themselves).

Instead, the OIG makes bundled pronouncements that all the records of interview "consist[] of an interview specifically to obtain information on the NFRTR." However, this assertion is a tacit admission that the documents themselves are factual in nature. While it may be true that the OIG used these interviews ultimately for some inclusion in the OIG's final report, it cannot withhold the factual information simply because the facts are contained within deliberative documents. *See EPA v. Mink*, 410 U.S. 73, 91 (1973). The same can be said for the "document summary", identified as document numbers 306-309. These were partially withheld; indeed, the only portions that were unredacted were statements that made it in the final report. [Docket #22-4]. These statements, which include comments on the NFRTR, stating "[ATF should] stop operating like a third world Department of Motor Vehicle office" is outrageous enough in itself to call into question the entire NFRTR. See Docket #22-4, p. 49.

It is important to explain for this Court what the NFRTR is. The NFRTR is the National Firearms Registration and Transfer Record which contains records on firearms covered under the National Firearms Act ("NFA"). These firearms include machineguns, suppressors, destructive devices, short-barrel rifles, short-barrel shotguns and "any other weapons." The OIG stated in its report that it "conducted the review [of the NFRTR] in response to members of Congress who had received letters from citizens expressing concern about the accuracy and completeness of the NFRTR. These citizens asserted that errors in the NFRTR and errors in

decisions by NFA Branch employees left NFA weapons owners vulnerable to unjust convictions for violating the NFA." See Docket #22-4, p. ii. The "Results in Brief" from the OIG contained the following statement:

> We found that since 2004, the NFA Branch has improved significantly the timeliness of both processing NFA weapons applications and responding to customer inquiries. However, continuing management and technical deficiencies contribute to inaccuracies in the NFRTR database. For example, NFA Branch staff do not process applications or enter data into the NFRTR in a consistent manner, which leads to errors in records and inconsistent decisions on NFA weapons applications. In addition, the NFA Branch has a backlog of record discrepancies between the NFRTR and inventories of federal firearms licensees that were identified during ATF compliance inspections. Further, the NFRTR's software programming is flawed and causes technical problems for those working in the database. **The lack of consistency in procedures and the backlog in reconciling discrepancies, combined with the technical issues, result in errors in the records, reports, and queries produced from the NFRTR. These errors affect the NFRTR's reliability as a regulatory tool when it is used during compliance inspections of federal firearms licensees.** However, we did not find evidence that individual weapons owners or federal firearms licensees had been sanctioned or criminally prosecuted because of errors in the database, as asserted in the citizens' letters.

*Id.*, p. iii.

The NFRTR is used in civil forfeiture proceedings to determine whether an NFA-regulated firearm is properly registered. In a recent case regarding machineguns, the United States started civil forfeiture proceedings against firearms that the ATF declared to be machineguns. In that case, the United States District Court for the District of Kentucky, Louisville Division, stated that "[t]he Government therefore bears the burden of proving that (1) the property qualifies as machine guns under the National Firearms Act, and (2) the property was possessed by Dodson and was not registered to him under the NFRTR." U.*S. v. Armalite, Model AR-18, 5.56mm Caliber Rifle, Serial Number: S373*, 3:13-CV-00972-TBR, 2014 WL 5441185, at *3 (W.D. Ky. Oct. 22, 2014) (citation omitted). Pursuant to 26 U.S.C. § 5861, "It shall be unlawful for any person-- (d)

10

to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record…" As such, after a "search of the NFRTR revealed that neither weapon was registered[,]" the machineguns were subject to forfeiture which is a civil proceeding. *See Armalite*, at *3.

Because the OIG's withheld documents would tend to cast doubt upon the reliability of the NFRTR, and in fact, the OIG's report as stated above, that "[t]he lack of consistency in procedures and the backlog in reconciling discrepancies, combined with the technical issues, result in errors in the records, reports, and queries produced from the NFRTR. These errors affect the NFRTR's reliability as a regulatory tool when it is used during compliance inspections of federal firearms licensees." If, in civil litigation, it would be determined that the claimant in a civil forfeiture proceeding would be entitled to these documents at issue in this FOIA, then the OIG must produce them under FOIA to the requestor here.

The Declaration of Robert E. Sanders, who had a 24 year career in the ATF and preceding agencies, came to the same conclusion as stated in the attached Declaration. Mr. Sanders refers the reader to a write-up detailing a "roll call" video by then-chief of the National Firearms Act Branch of the ATF who stated in a video that the ATF essentially perjures themselves in courts of law. The video is available for this Court's viewing at https://www.youtube.com/watch?v=bO6BQVAZpwU. The statement occurs at about the 1:15 minute mark. The website Mr. Sanders refers the reader to is located at http://www.elfie.org/~croaker/batflies.html.[1] Mr. Busey stated in the video that "...when I first came in a year ago, our error rate was between 49 and 50 percent, so you can imagine what the

---

[1] The document located at this website has been printed and produced as Exhibit "D" for the Court's convenience.

accuracy of the NFRTR could be, if your error rate is 49 to 50 percent." This video then became Brady material under *Brady v. Maryland*, 373 U.S. 83.

In another case, *U.S. v. Marshall*, 07-20569-CR, 2011 WL 2708677, at *3 (S.D. Fla. July 12, 2011), the government was ordered to "provide records regarding the inaccuracy of the National Firearms Registration and Transfer Record from 2005 to the present." The documents at issue should be included within the subset of documents tending to prove the inaccuracy of the NFRTR. Although this Circuit Court has held that *Brady* does not destroy Exemption 5 in the civil context as criminal and civil trials have different standards[2], the errors in the NFRTR are material in the civil forfeiture context as the NFRTR is queried to determine whether an NFA firearm/weapon is registered and to whom the firearm/weapon is registered. Mr. Sanders' declaration supports this position, as he stated "[i]n any action to forfeit an allegedly unregistered NFA firearm, documents indicating that the NFRTR is unreliable would be discoverable." See Declaration of Robert E. Sanders, Exhibit "C."

For example, in a forfeiture action, the custodian of the NFRTR will certify the results of a search of that database. The certificate, while hearsay, will fall within an exception for public records. See Rule 803(8), F. R. Evid. However, an element of that exception is Rule 803(8)(B): "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Accordingly, documents establishing that the NFRTR is untrustworthy would be admissible in a forfeiture action to challenge the admissibility of the alleged NFRTR search

---

[2] See *Boehm v. F.B.I.*, 948 F. Supp. 2d 9, 29 (D.D.C. 2013).

results.

The Declaration of Mrs. Waller is insufficient to hold otherwise.  Mrs. Waller states that the documents "reflect the internal OIG deliberative process leading to the production of the final NFRTR report, because, among other things, they reflect the determinations by OIG line-level personnel of what information to gather and what information warranted reporting."  See Declaration of Waller, para. 10.  However, the "work papers" contain records of interviews, of which Plaintiff has necessarily not been privy to, and thus, can only speculate that much of what is recorded in these "work papers" is instead "factual" data transcribed by whomever is conducting the interview.  Mrs. Pelletier's declaration includes a statement that "some such notes are factual in nature…"  *See* Declaration of Pelletier, para. 6.  Mrs. Pelletier further states that the "withheld information is predecisional because it was created before the OIG issued its final NFRTR report…"  *Id*.  Accepting that argument turns FOIA on its head that no agency record created/viewed/accepted before issuance of a final report would be exempt under FOIA.  It also ignores the factual data that would be included from the scrivener.

As to the statement from Mrs. Pelletier that the survey results would somehow "illustrate the deliberative process the OIG engaged in to determine what information was reliable and relevant to the findings in the final report" defy logic.  The survey results are what they are, and unless they are somehow deliberative notes of the transcriber putting his or her thought processes down on paper and not merely reciting what is told to the transcriber from the interviewee, those factual survey results should be disclosed.

Additionally, the OIG claims that this data might confuse the public.  See Motion, p. 10.  It should be apparent that the NFRTR, which is the basis for criminal convictions, civil

forfeitures, and which maintains lawful registrations of NFA firearms, should be accurate if we are to maintain a registry of firearms at all.  There can be no greater public interest than verifying that agency watchdogs are doing the job.  With the horrific comment that the ATF is operating like a third world department of motor vehicles, and the videotaped "roll call" from Mr. Busey stating the ATF always testifies that the NFRTR is 100% accurate, it is Plaintiff's belief that the public has a right to know, subject to the appropriate privacy redactions, just how bad the NFRTR is.  Also, defendants charged with NFA violations and claimants in civil forfeiture should have a right to know if the database, presumably 100% accurate, is in fact accurate to sustain the convictions for violating the NFA and for upholding forfeitures based upon it.

Finally, the OIG's *Vaughn* index, stating its Exemption 5 for each of the documents withheld is stated verbatim: "Exemption b5 is applied to protect the deliberative recommendations and opinions contained in the interview statement.  Release of this information would have a negative impact on the integrity of the deliberative or decision-making processes within the agency by discouraging the expression of candid opinions and recommendations and inhibit the free and frank exchange of information among agency personnel necessary to execute the mission of the agency."  This statement is applied to every one of the documents withheld.  While the words "interview statement" may make sense in the context of a record of interview, it makes little sense when used in the context of a "workpaper index and assignments worksheet" (document 0140-0142), which use the same language for the Exemption 5.  See also documents 0150-0152, same language; documents 0201-0204, same; documents 0205-2014, same; 0306-0309, same; documents 0381-0470, same; documents 0471-0488, same; document 0489-0490, same.

The OIG's *Vaughn* index does not provide an adequate justification for withholding

under Exemption 5. "In other words, unlike other exemptions where the agency declaration and *Vaughn* index may be read in conjunction to provide an adequate justification for application of an exemption to a class or category of records, to sustain its burden of showing that records were properly withheld under Exemption 5, an agency must provide in its declaration and *Vaughn* index precisely tailored explanations for each withheld record at issue." *Natl. Sec. Counselors v. C.I.A.*, 960 F. Supp. 2d 101, 188 (D.D.C. 2013).

"At a minimum, the agency must provide three basic pieces of information in order for the deliberative-process privilege to apply: (1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient." *Id*. at 189. The OIG did not do this, however, as the Vaughn demonstrates, for each withheld document, simply that it applied the exemption to "protect deliberative recommendations and opinions contained in the interview statement." As such, the OIG failed its burden and summary judgment is inappropriate.

It should be also noted that under Exemption 5, documents are only protected if the source is a government agency. *See Dept. of Int. v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). So documents dealing with NFATCA, not a government agency, should be disclosed, unless of course, NFATCA was hired as an outside consultant, which then it could arguably be considered under Exemption 5. *Id*. at 10. However, Plaintiff is unaware if OIG hired NFATCA as an outside consultant.

In light of the foregoing, OIG's withholding is not proper under FOIA and the OIG should be required to disclose the documents requested, after proper redactions made with respect to the individuals privacy.

Alternatively, Plaintiff requests that the Court conduct an *in camera* review of selected portions of the withheld documents as provided for under 5 U.S.C. § 552(a)(4)(B). The United States Court of Appeals for the D.C. Circuit have "… have repeatedly noted that *in camera* review may be particularly appropriate when either the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims…" *Quinon v. F.B.I.,* 86 F.3d 1222, 1228 (D.C. Cir. 1996). Such is the case here with the generalized and sweeping affidavits, and if the Court desires, an *in camera* inspection of a Court-picked sample may prove helpful in determining whether the OIG has properly claimed Exemption 5 on the bulk of the data. Plaintiff would suggest documents 0491-0500 (10 pages); documents 0223-0236 (14 pages); and documents 0058-0012 (55 pages) as a fair sampling of the records that may assist the Court.

## Conclusion

Plaintiff's motion should be granted, and Defendant's motion should be denied, or in the alternative, Plaintiff requests the Court conduct an *in camera* inspection of a sample of documents.

Dated: October 28, 2016

By: /s/ Stephen D. Stamboulieh
Stephen D. Stamboulieh
Stamboulieh Law, PLLC
P.O. Box 4008
Madison, MS  39130
(601) 852-3440
stephen@sdslaw.us
DC District Court Bar# MS0009

Alan Beck
Attorney at law
2692 Harcourt Drive
San Diego, CA 92103
Tel: 619-905-9105 (Cell)
*Admitted pro hac vice

*Counsel for Plaintiff*

16

## **CERTIFICATE OF SERVICE**

    I, Stephen D. Stamboulieh, counsel for Plaintiff, hereby certify that on this day, I have caused to be filed the foregoing document or pleading with the District Court's ECF which sent a notice and a copy of the foregoing to all counsel of record.

    Dated:  October 28, 2016

                                                                    /s/ *Stephen D. Stamboulieh*
                                                                    Stephen D. Stamboulieh