UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DAVID T. HARDY,

                Plaintiff,

         v.

BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES, *et al.*,

                Defendants.

Civil Action No. 15-1649 (BAH)

Judge Beryl A. Howell

## MEMORANDUM OPINION

The plaintiff, David T. Hardy, seeks attorneys' fees and costs as a "prevailing party" under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a)(4)(E), Pl.'s Mot. Att'ys' Fees ("Pl.'s Mot.") at 1, ECF No. 36, in this lawsuit challenging aspects of the response by defendants, the Department of Justice Office of Inspector General ("OIG") and Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), to the plaintiff's FOIA request. *See* Compl. ¶¶ 10, 18, 21, ECF No. 2.[1] After the parties' cross-motions for summary judgment were granted in part and denied in part, the parties stipulated to a dismissal of the case, except for the plaintiff's claim for attorneys' fees. Pl.'s Mot. ¶ 15. For the reasons set forth below, the plaintiff's motion for attorneys' fees is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

The factual and procedural history to this case is fully set out in this Court's prior Memorandum Opinion and, consequently, only those facts pertinent to resolving the instant motion are summarized below. *See Hardy v. Bur. of Alcohol, Tobacco, Firearms & Explosives*

---

[1]    The complaint describes Mr. Hardy as an "attorney and internet blogger who disseminates information relating to firearms law issues." Compl. ¶ 4.

1

*(Hardy I)*, 243 F. Supp. 3d 155, 159–61 (D.D.C. 2017). In March 2015, the plaintiff submitted a FOIA request to OIG and ATF seeking documents regarding ATF's policies on registered handguns and "any statements, surveys, or reports of interviews given" to OIG "in connection with" an OIG report issued in June 2007 titled "The Bureau of Alcohol, Tobacco, Firearms and Explosives' National Firearms Registration and Transfer Record" ("NFRTR"). *Id*. at 159–60. The parties agreed that the requested records each fell into one of three categories: "(1) records of interviews and notes of telephone interviews, (2) survey results, a draft survey, survey data summaries, and survey data analysis, and (3) miscellaneous work papers, including indexes of materials and interviews; and summaries of a document and emails that were reviewed." *Id.* at 160.

In August 2015, OIG prepared a response to the plaintiff's request stating that all responsive records were exempt from disclosure pursuant to the "deliberative process" privilege under Exemption 5 of the FOIA. *Id.* (citing Defs.' Mot. Summ. J., Ex. 2, Decl. of Deborah M. Waller ("Waller Decl.") ¶¶ 5–6, ECF No. 22-2); *see also* Defs.' Answer, Ex. 1, OIG Resp. Pl.'s FOIA Request, Aug. 27, 2015 ("OIG Response"), ECF No. 13-1 (stating that "responsive documents have been reviewed" and "[i]t has been determined that these documents be withheld in their entirety"). The plaintiff then initiated this lawsuit in October 2015 challenging both defendants' responses to his FOIA request. Compl. ¶¶ 17–22.

In January 2016, the Court imposed a scheduling order, consistent with the parties' proposal in a Joint Status Report, ECF No. 15, requiring the release of any nonexempt material by February 29, 2016. Minute Order (Jan. 9, 2016). OIG subsequently reviewed sixty responsive documents and determined that the portions that had been directly quoted in the publicly available NFRTR "could be segregated and released without compromising the

2

deliberative processes of the OIG." Waller Decl. ¶ 7. Three days ahead of the Court's February 29, 2016, disclosure deadline, OIG provided forty pages of highly redacted documents and an "index of responsive records withheld under claim of exemption," pursuant to *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (the "*Vaughn* Index"), reflecting the withholding of a total of 511 pages. *Hardy I*, 243 F. Supp. 3d at 160–161, 165. Likewise, after a first release on February 26, 2016, and a rolling production through June 29, 2016, ATF provided 539 documents, a production that the plaintiff acknowledged "complied with [his] FOIA request." *Id.* at 159 n.1; Pl.'s Statement of Facts ("Pl.'s Facts") ¶ 9, ECF No. 36; Defs.' Opp'n Pl.'s Mot. Att'ys' Fees ("Defs.' Opp'n"), Ex. 2, Decl. of Peter J. Chisholm, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("Chisholm Decl.") ¶ 5, ECF No. 37-2.

The parties' cross-motions for summary judgment were each granted in part and denied in part. *Hardy I*, 243 F. Supp. 3d at 159. Specifically, of the three categories of withheld records, the Court concluded that OIG was entitled to summary judgment as to the first category of records described as "records of interviews and notes of telephone interviews," *id.* at 170, but only as to a single document in category two (*i.e.*, "Survey Draft"), *id.* at 174, and a single document in category three (*i.e.*, "Interview Workpaper"), *id.* at 177. Otherwise, OIG was denied summary judgment. The plaintiff was granted summary judgment and OIG was ordered to disclose three documents in category two (*i.e.*, two "Survey Results" and "Final Survey Data"). *Id*. at 173. For the remaining category two and three documents, both parties' motions were denied because OIG "ha[d] not provided sufficient information for the Court to determine, one way or the other, whether these documents [were] protected by Exemption 5." *Id*. at 175; *see also id*. at 178. In total, of the sixty documents withheld, three documents were ordered to be released, all documents in category one and two other documents in the remaining categories

were deemed properly withheld, and OIG was denied summary judgment concerning the remaining documents.

In June 2017, OIG provided three documents—two documents labeled "Survey Results" and one document labeled "Final Survey Data"—to the plaintiff as required by the Court's Order. Pl.'s Facts ¶ 14; *Hardy I*, 243 F. Supp. 3d at 179. OIG also released five other documents as to which the Court held there was insufficient information to grant either party's motion. Defs.' Opp'n, Ex. 1, Decl. of Deborah M. Waller ("Waller Fees Decl.") ¶ 8, ECF No. 37-1. The parties then stipulated to a dismissal of this case in its entirety, except for the plaintiff's instant claim for attorneys' fees. Stip. of Dismissal at 1, ECF No. 35. The plaintiff now seeks attorneys' fees for time spent litigating the merits of this case as well as fees for time spent on the fee motions.

## II. LEGAL STANDARD

The FOIA authorizes an award of attorneys' fees reasonably incurred by a plaintiff who "has substantially prevailed" in the litigation. 5 U.S.C. § 552(a)(4)(E)(i). This statutory provision "naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'" *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521, 524 (D.C. Cir. 2011) (citing *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)). Accordingly, the plaintiff must demonstrate both eligibility and entitlement to the award. *See McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 710 (D.C. Cir. 2014); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1495 (D.C. Cir. 1984) ("[E]ligibility alone is not enough . . . the complainant must [also] show that he or she is 'entitled' to an award.") (citation omitted). If the plaintiff has established both

eligibility and entitlement, he must also establish the reasonableness of the fee request. *See Covington v. District of Columbia*, 57 F.3d 1101, 1107–08 (D.C. Cir. 1995).

To satisfy the eligibility requirement, the plaintiff must show that he or she "substantially prevailed" in the underlying FOIA litigation by gaining relief from either: "(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 USC § 552(a)(4)(E)(ii). Under the first prong, the claimant substantially prevails when "'the order changed the legal relationship between [the parties],' and . . . the plaintiff 'was awarded some relief on the merits of his claim.'" *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 367 (D.C. Cir. 2008) (quoting *Davy v. C.I.A.* (*Davy I*), 456 F.3d 162, 165 (D.C. Cir. 2006)) (internal quotations omitted). Under the second prong, or "catalyst theory," attorney's fees may be awarded solely due to a change in an agency's position, for example, when the plaintiff's lawsuit "substantially caused the government to release the requested documents before final judgment." *Brayton*, 641 F.3d at 524–25.[2]

If the plaintiff has substantially prevailed, the court proceeds to the entitlement prong. The D.C. Circuit "has long applied a multi-factor standard for evaluating whether a plaintiff who is eligible for attorneys' fees is also entitled to such fees." *McKinley*, 739 F.3d at 711. "Four non-exclusive factors typically govern the entitlement inquiry: '(1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) the reasonableness of the agency's withholding' of the requested

---

[2] The catalyst theory was utilized by this Circuit until 2001, when the Supreme Court held that "the 'catalyst theory' is not a permissible basis for the award of attorney's fees." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 610 (2001). Congress responded by resurrecting the catalyst theory for FOIA cases in the Open Government Act of 2007. *See Davis v. U.S. Dep't of Justice*, 610 F.3d 750, 752 (D.C. Cir. 2010). "The purpose and effect of this law, which remains in effect today, was to change the 'eligibility' prong back to its pre-*Buckhannon* form." *Brayton*, 641 F.3d at 525. As a result, "plaintiffs can now qualify as 'substantially prevail[ing],' and thus become eligible for attorney fees, without winning court-ordered relief on the merits of their FOIA claims." *Id.* (alteration in original).

documents." *Id.* (quoting *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1093 (D.C. Cir. 1992)). While "[n]o one factor is dispositive," "if the Government's position is correct as a matter of law, that will be dispositive." *Davy v. CIA* (*Davy II*), 550 F.3d 1155, 1162 (D.C. Cir. 2008). "The sifting of those criteria over the facts of a case is a matter of district court discretion." *Tax Analysts*, 965 F.2d at 1094.

If the plaintiff has established eligibility and entitlement, the plaintiff must then establish the reasonableness of the calculation in its fee request. *See Covington*, 57 F.3d at 1107–08. The reasonableness determination involves three parts: "(1) determination of the number of hours reasonably expanded [sic] in litigation; (2) determination of a reasonable hourly rate or 'lodestar'; and (3) the use of multipliers as merited." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988) (citation omitted). The plaintiff must submit evidence regarding "the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107. The reasonable hourly rate is most commonly determined by the *Laffey* Matrix, which "sets out a general guideline for awarding attorneys' fees based on experience . . . adjusted for inflation." *Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015). Provided that the plaintiff has submitted the required information, the presumption is that the number of hours billed and the hourly rates are reasonable. *Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101 (D.D.C. 2010) (citing *Blackman v. District of Columbia*, 677 F. Supp. 2d 169, 172 (D.C. Cir. 2010)). The burden then shifts to the defendant to "provide specific contrary evidence tending to show that a lower rate would be appropriate." *Covington*, 57 F.3d at 1109–10 (internal quotations omitted).

## III. DISCUSSION

The defendants challenge the plaintiff's fee request on the grounds that he is not entitled to fees and that the fee request is excessive. These issues are considered in turn below.

### A. The Plaintiff Is Eligible for Fees from OIG but Not from ATF

The plaintiff contends he is eligible for fees from both defendants because "neither OIG nor BATFE produced any documents prior to the filing of the Complaint." Pl.'s Mot. at 3. While the plaintiff's assertion about the timing of production is correct, this fact is not dispositive of his eligibility for attorneys' fees. As the D.C. Circuit has made clear, in the context of FOIA attorneys' fees, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation." *Weisberg*, 745 F.2d at 1496. When the plaintiff advances a catalyst theory to establish eligibility for FOIA attorneys' fees, "the focus is highly contextual on what occurred in the lawsuit at issue, including consideration of the sufficiency of the agency's explanation for production delays." *Codrea v. Bur. of Alcohol, Tobacco, Firearms & Explosives*, Civ. No. 15-0988, 2017 WL 4334119, at *4 (D.D.C. Sept. 28, 2017).

Each agency responded differently to the plaintiff's FOIA request. OIG, in August 2015, initially informed the plaintiff that all responsive records were exempt from disclosure under FOIA Exemption 5's "deliberative process" privilege. Waller Decl. ¶ 5. Only after the plaintiff initiated this lawsuit and the Court entered a scheduling order requiring the disclosure of nonexempt documents by February 29, 2016, did OIG review sixty responsive documents and determine that portions of those records could be released. Then, three days before the Scheduling Order deadline, OIG produced forty highly redacted pages to the plaintiff. *Hardy I*, 243 F. Supp. 3d at 160; Pl.'s Facts ¶ 10; Defs.' Opp'n at 2–4. Upon judicial scrutiny of OIG's

7

claimed withholdings, the parties' cross-motions for summary judgment were each granted in part and denied in part, requiring OIG to produce certain withheld documents, while approving the withholding of other documents and deferring judgment on other documents. *Hardy I*, 243 F. Supp. 3d at 179. After the decision, OIG released the required documents to the plaintiff and also voluntarily released five documents for which the Court had otherwise required further explanation for withholding. Defs.' Opp'n at 3.

The defendants "recognize that authority exists holding that a FOIA plaintiff substantially prevails where a court issues a scheduling order requiring an agency to produce responsive documents by a date certain, as the Court did here." Defs.' Opp'n at 4–5. Both the fact that OIG produced records when a scheduling order was in place, after initially declining to do so, and the fact that the plaintiff "obtained relief through . . . a judicial order," 5 U.S.C. § 552(a)(4)(E)(ii)(I), by partial grant of the plaintiff's cross-motion for summary judgment," *Hardy I*, 243 F. Supp. 3d at 179, establishes that the plaintiff is eligible for fees from OIG.

The same cannot be said of ATF. ATF's production satisfied the plaintiff's request in full, and accordingly, summary judgment was granted and final judgment entered for ATF. *Hardy I*, 243 F. Supp. 3d at 159 n.1 (noting the plaintiff's view that ATF's timely production under the Scheduling Order "complied with [his] FOIA request"); Pl.'s Facts at ¶ 9. The plaintiff argues that this production makes him a prevailing party because ATF did not "produce[ ] any documents prior to the filing of the Complaint." Pl.'s Mot. at 3. This sequence of events does not, on its own, demonstrate that "the institution and prosecution of the litigation *cause[d]* the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981) (emphasis added). Causation requires more than correlation, and thus "[t]he causation requirement is missing when disclosure results

not from the suit but from delayed administrative processing." *Short v. U.S. Army Corps of Eng'rs*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) (citing *Weisberg*, 848 F.2d at 1268–71); *see also Church of Scientology*, 653 F.2d at 588 (explaining that where "an unavoidable delay accompanied by due diligence in the administrative processes was the actual reason for the agency's failure to respond to a request, then it cannot be said that the complainant substantially prevailed in [its] suit") (quoting *Cox v. U.S. Dep't of Justice*, 601 F.2d 1, 6 (D.C. Cir. 1979)) (internal citations omitted).

Here, ATF explained that its "delay in producing records to Plaintiff was caused by an administrative backlog, not bad faith." Defs.' Opp'n at 15. Around the time the plaintiff submitted his request, ATF was experiencing "a significant increase in FOIA related requests from the public and oversight entities, which has resulted in a backlog of FOIA requests." Defs.' Opp'n, Ex. 2, Decl. of Peter J. Chisholm, Acting Chief, Disclosure Division, Bureau of Alcohol, Tobacco, Firearms and Explosives ("Chisholm Decl.") ¶ 14, ECF No. 37-2. In addition, "the Disclosure Division was heavily involved with the review of approximately 20,000 pages of documents responsive to *Judicial Watch v. U.S. Department of Justice* (No. 1:12-cv-01510)" and drafting the associated *Vaughn* index. *Id.* ¶ 15. After the plaintiff submitted his request, "a high priority redaction project consumed the entire Disclosure Division" that took the Division six weeks to complete, thus "taking staff away from all other workloads." *Id.* Along with the preexisting backlog, this project understandably caused delays in responding to the plaintiff's request. The ATF proffered nearly identical reasons for its delay in production in a recent FOIA lawsuit before this Court. *See Codrea*, 2017 WL 4334119 at *3–4. As in *Codrea*, ATF has fully explained that the delays due were due to backlog and other projects and has provided a sufficient description of its administrative difficulties to establish that causation is lacking here. Accordingly, the plaintiff

has not demonstrated that this litigation caused ATF to produce nearly 600 documents and thus he is not eligible for an award of attorneys' fees from ATF.

### B.      Entitlement to Fee Awards

The defendants contend that, even if he is eligible for fees from OIG, the plaintiff's motion should nevertheless be denied because he is not entitled to them. Defs.' Opp'n at 5. Review of the four relevant factors in determining entitlement to fees, *McKinley*, 739 F.3d at 711, demonstrates that the plaintiff is entitled to some attorneys' fees from OIG.[3]

#### 1.     *Public Benefit*

The first factor, public benefit derived from the case, "requires consideration of both the effect of the litigation for which fees are requested and the potential public value of the information sought." *Davy II*, 550 F.3d at 1159. "If a plaintiff's victory is likely to add to the fund of information that citizens may use in making vital political choices, such a public benefit weighs in favor of granting the plaintiff attorney fees." *Short*, 613 F. Supp. 2d at 107 (internal quotations omitted). In evaluating the public benefit of the information, "[t]he court must also consider the extent to which the information released is already in the public domain." *Nw. Coal. for Alts. to Pesticides v. Browner*, 965 F. Supp. 59, 64 (D.D.C. 1997).

OIG produced survey results, survey data, and survey question analyses surrounding the OIG's review of the NFRTR. Pl.'s Mot. at 2. The plaintiff says this information is in the public interest because "the Work Papers disclose evidence of reasonable doubt that the NFRTR is accurate and reliable"; because the ATF "has consistently tried to avoid disclosing evidence that the NFRTR is inaccurate, incomplete, and unreliable"; and because the work papers are "Brady material that should be disclosed to defense counsel." Pl.'s Mot., Ex. 4, Decl. of Eric Martin

---

[3] The plaintiff is not eligible for fees from ATF; thus, his entitlement to fees from ATF is not assessed.

Larson ("Larson Decl.") ¶ 3, ECF No. 36-4. The defendants dispute any public benefit to disclosure of these records because "that information [wa]s already in the public domain" after the NFRTR was made public in 2007. Defs.' Opp'n at 6. Specifically, the defendants say that the NFRTR is "filled with statements similar to those" that were released to the plaintiff, including statements made in survey responses concerning the technical issues, backlogs in updates, errors, and discrepancies associated with the NFRTR. *Id.*

While the NFRTR was publicly available before this lawsuit, "the mere fact that material is in the public domain does not justify denying a fee waiver." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 36 (D.C. Cir. 1998). The survey data and question analyses turned over to the plaintiff included agency-generated summaries of the survey responses, some—but not all—of which had been made publicly available in the NFRTR. The fact that an agency record disclosed in response to a FOIA request "incorporates publicly available information," however, "does not detract from its value independent of the source material." *Id.* Rather, insight into how the agency reacted to the study and what information they chose to release "is the kind of public understanding of government operations that FOIA was designed to foster." *Id.* Accordingly, public value is present in seeing which portions of the survey data and question analyses OIG chose to make public in the NFRTR.

### 2. *Commercial Benefit and the Nature of the Plaintiff's Interest*

The second and third factors, commercial benefit to the plaintiff and the nature of the plaintiff's interest in the records, are often "considered together" and "address whether the plaintiff had a sufficient private incentive to pursue his FOIA request even without the prospect of obtaining attorneys' fees." *McKinley*, 739 F.3d at 712 (internal quotations omitted). "When a litigant seeks disclosure for a commercial benefit or other personal reasons, an award of fees is

usually inappropriate" because the plaintiff has sufficient motivation to bring suit without the promise of attorneys' fees. *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995). If the sought-after information "was scholarly or journalistic or public-interest oriented," however, "a court would generally award fees" unless the plaintiff's interest "was of a frivolous or purely commercial nature." *Davy II*, 550 F.3d at 1160–61 (internal quotations omitted and alterations adopted).

Here, the plaintiff says that the documents "are being publicized at no profit" to him and that his interest in the documents is as "an attorney and internet blogger on firearms law." Pl.'s Mot. at 11. He published an article online after the documents were received, and he also provided the documents to a defense attorney in a National Firearms Act prosecution. *Id.* The defendants point to the plaintiff's status as an attorney to argue that he "has both a personal and commercial interest in the information he requested." Defs.' Opp'n at 11. The defendants also aver that providing the documents to another attorney "demonstrates a purely personal, if not commercial, reason for wanting the information." *Id.* at 12. These arguments are unpersuasive. The plaintiff has already blogged about the documents he received, and his past publications indicate his scholarly interest in the topic. Pl.'s Mot. at 11; Pl.'s Reply Defs.' Opp'n Pl.'s Mot. Att'ys' Fees ("Pl.'s Reply") at 6, ECF No. 38. He has shared the information he received with "law professors and attorneys interested in the right to arms and in firearms law," and he did not charge fees for that distribution. Pl.'s Mot., Ex. 5, Decl. of David T. Hardy ("Hardy Decl.") ¶¶ 6, 10, ECF No. 36-5; *see also Davy II*, 550 F.3d at 1162 (noting that a plaintiff who "request[ed] information under FOIA about what the government was up to that he intend[ed] to share with the public" did so as part of his scholarship and news-gathering role, "rather than

merely to promote his private commercial interests"). The second and third factors are therefore satisfied.

### 3. *Reasonableness of the Defendants' Withholdings*

The fourth factor, the reasonableness of the agency's withholding of the requested documents, "considers whether the agency's opposition to disclosure had a reasonable basis in law" and "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." *Davy II*, 550 F.3d at 1162 (internal citation and quotations omitted). "[I]f the Government's position is correct as a matter of law, that will be dispositive. If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus." *Id.* (internal citation omitted).

The plaintiff posits that "OIG's rationale for withholding some of the documents is not correct as a matter of law as set forth in th[e] Court's opinion," Pl.'s Mot. at 12, while the defendants counter that OIG acted reasonably because the "vast majority of contested withholdings" were upheld, Defs.' Opp'n at 12–15. Both parties' arguments have merit. As detailed in the Memorandum Opinion granting partial summary judgment to OIG, the withholding of documents in category one concerning "Records of Interviews and Telephone Interview Notes," which constituted the bulk of the withheld records, as well as two documents from the remaining two categories, was correct as a matter of law. *Hardy I*, 243 F. Supp. 3d at 168–70, 173–74, 176–77. As for the three documents OIG was instructed to release—two "Survey Results" and the "Final Survey Data"—OIG did not have a colorable basis for its withholding. These documents "[we]re not summaries by individuals who culled information from a much larger universe of facts," "d[id] not reflect an exercise of judgment" by OIG, and,

13

as a matter of law, were not covered by FOIA Exemption 5. *Id.* at 171 (alterations adopted and internal quotations omitted). Yet, OIG's motion for summary judgment was denied for the remaining documents, for which the agency had provided insufficient information to justify withholding. *Id.* at 174–76, 179. Without more, OIG has not established a colorable basis for withholding these documents and the plaintiff is likewise entitled to fees.

In sum, the plaintiff is eligible for and entitled to reasonable attorneys' fees from OIG due to OIG's release of records, after initially claiming all were exempt before the lawsuit was filed and a scheduling order in place, and the plaintiff's partial success on his cross-motion for summary judgment.

### C. Reasonable Fee Award

Although the plaintiff is eligible for and entitled to some award of fees, that award must be reasonable. *See Judicial Watch, Inc. v. U.S. Dep't of Justice*, 878 F. Supp. 2d 225, 238 (D.D.C. 2012) ("The FOIA permits an award of '*reasonable* attorney fees and other litigation costs' to a plaintiff that demonstrates its eligibility for and entitlement to such an award." (quoting 5 U.S.C. § 552(a)(4)(E)(i)) (emphasis in original)). "The usual method of calculating reasonable attorney's fees is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the 'lodestar' amount." *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998). The defendants have not challenged either the plaintiff's claimed $436 in costs or the plaintiff's claimed hourly rate of $395 per hour for an attorney with eight to ten years of experience and $339 per hour for an attorney with six to seven years of experience, based on the *Laffey* Matrix. Thus, only the hours reasonably expended in the litigation is at issue. *See* Pl.'s Mot. at 14; Defs.' Opp'n at 15–18. The hours expended can

be broken down into time spent on the merits of the case and time spent on the request for attorneys' fees. These two fee categories will be addressed in turn.

### 1. *Fees for Litigation of the Merits*

When a plaintiff has achieved only partial or limited success, "[t]here is no precise rule or formula" for determining the reasonable amount of attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success," and "where the plaintiff achieved only limited success, the court should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 436, 440. "The essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Here, the plaintiff achieved partial success: after this lawsuit was initiated, ATF made a compliant production and OIG turned over some redacted documents. *Hardy I*, 243 F. Supp. 3d at 159 & n.1. This Court then granted the parties' summary judgment motions in part and denied them in part, requiring that OIG produce additional documents to the plaintiff. *Id.* at 179. OIG ultimately produced those documents, as well as other documents as to which OIG had been denied summary judgment. Pl.'s Mot. ¶ 15. At the same time, the bulk of OIG's withheld documents were found to be properly exempt from disclosure. Thus, some adjustment to the plaintiff's request for fees is warranted as he did not completely succeed in his efforts. As discussed, the plaintiff is not entitled to fees from ATF. Accordingly, the time spent on tasks related to only ATF will be deducted from the plaintiff's hours. This amounts to a reduction of 19.1 hours (8 for Stamboulieh and 11.1 for Beck). *See* Pl.'s Mot., Ex. 7, Decl. of Stephen D.

Stamboulieh ("Stamboulieh Decl.") at 5–16, ECF No. 36-7; Pl.'s Mot., Ex. 8, Decl. of Alan Beck ("Beck Decl.") at 4–5, ECF No. 36-8.

The defendants also challenge the plaintiff's request by arguing that the plaintiff seeks fees for noncompensable tasks, including time spent reviewing documents produced by the defendants and time spent on "simple tasks" such as heeding the Court's scheduling orders. Defs.' Opp'n at 17–18. Regarding document review, "it would seem critical to the prosecution of a FOIA lawsuit for a plaintiff to review an agency's disclosure for sufficiency and proper withholding during the course of its FOIA litigation." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 217, 239–40 (D.D.C. 2011). The plaintiff is therefore entitled to fees for time spent reviewing the adequacy of the defendants' production to determine how to proceed in this litigation. *See Elec. Privacy Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 159 (D.D.C. 2015) ("[T]o the extent that the released documents are being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding, such document review time is properly included in a FOIA attorney's fees award.").

The plaintiff is not, however, entitled to recover for time spent reviewing the documents turned over as a result of the Court's Memorandum Opinion, as "Plaintiff would have had to expend this time had [the defendants] timely produced the documents without litigation." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 825 F. Supp. 2d 226, 231 (D.D.C. 2011). Nor is the plaintiff entitled to fees for time spent reviewing documents produced by ATF, as discussed above. According to the plaintiff's records, this amounts to a one-hour deduction for the time spent reviewing documents produced after the Court's opinion, in addition to the deduction for time spent on ATF-related matters. Stamboulieh Decl. at 15.

As for the fees associated with heeding reset deadlines and other "simple tasks," the goal in awarding attorneys' fees "is not line-item supervision of billing practices but 'rough justice.'" *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 197 F. Supp. 3d 290, 295 (D.D.C. 2016). The Court need not "engage in a picayune battle of the ledgers." *Elec. Privacy Info. Ctr. v. U.S. Drug Enf't Admin*, Civ. No. 15-00667, 2017 WL 3049403, at *6 (D.D.C. July 18, 2017). While the inefficiencies in the plaintiff's billing are noted, judicial resources will not be spent evaluating the reasonableness of each individual entry in the plaintiff's ledgers.

The defendants also challenge the plaintiff's requested amount as excessive given the plaintiff's "barely minimal" success. Defs.' Opp'n at 16. The plaintiff recognizes that his success was limited and has voluntarily imposed a ten percent reduction in fees to account for "duplication of work between the two attorneys" and partial success on "Plaintiff's Motion for Summary Judgment." Pl.'s Mot. at 15. The defendants do not acknowledge this reduction and do not suggest a more appropriate reduction. Rather, the defendants proffer an alternative method of calculating the plaintiff's fees, in which the requested amount is reduced in proportion to the pages spent arguing the successful claims on the merits. *See* Defs.' Opp'n at 16–17 (citing *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 63 (D.D.C. 2008)). While this method has been employed several times within this district, *see, e.g.*, *Elec. Privacy Info. Ctr.*, 197 F. Supp. 3d at 297, adoption of this methodology would create a perverse incentive for parties to write more simply in order to increase their potential fee awards.

A ten percent reduction does not adequately reflect the plaintiff's partial success. Of the sixty documents at issue at the summary-judgment stage, the plaintiff succeeded as to only three documents. Thus, "awarding [the plaintiff] its entire fee, and thus compensating it at least in part for time spent on a losing claim, would be an abuse of discretion." *Nat'l Sec. Archive v. Dep't of*

*Defense*, 530 F. Supp. 2d 198, 205 (D.D.C. 2008). OIG later voluntarily released five additional documents, for a total of eight documents disclosed. In this case, however, an award of fees proportional to the number of documents released would, given OIG's initial blanket withholding of all responsive records, "understate the degree of plaintiff's success and would almost amount to a free pass for the government's obdurate behavior." *Bloomgarden v. U.S. Dep't of Justice*, 253 F. Supp. 3d 166, 179 (D.D.C. 2017). Thus, to accomplish "rough justice" in the award of fees, the plaintiff's award will be reduced by fifty percent.

In sum, from the plaintiff's stated 98.1 hours spent litigating the merits of this case (67.2 for Stamboulieh and 30.9 for Beck), 19.1 hours will be deducted for work pertaining to only ATF (8 for Stamboulieh and 11.1 for Beck), and one hour will be deducted for time spent by Stamboulieh reviewing documents produced by OIG after the Court's order on summary judgment. With these reductions, the plaintiff will be awarded fees for 78 hours of work (58.2 for Stamboulieh and 19.8 for Beck) which, after a 50 percent reduction, amounts to 39 hours (29.1 for Stamboulieh and 9.9 for Beck). At undisputed rates of $395 for Stamboulieh and $339 for Beck, the total award for fees on the merits is $14,850.60 ($11,494.50 for Stamboulieh and $3,356.10 for Beck). The plaintiff is also entitled to $436 in costs; the defendants have not challenged that amount. Pl.'s Mot. at 14.

### 2.  *Fees on Fees*

Finally, the plaintiff requests fees for time spent on the Motion for Attorneys' Fees and accompanying reply brief. The law is "settled in this circuit" that "[h]ours reasonably devoted to a request for fees are compensable." *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Rest.*, 771 F.2d 521, 528 (D.C. Cir. 1985). "[T]he party requesting fees on fees has the burden of establishing the reasonableness of the request and must submit supporting documentation that

provides sufficient detail so that the Court can determine *with a high degree of certainty* that the hours billed were actually reasonably expended." *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008) (internal quotations omitted and alterations adopted) (emphasis in original).

In support of the fee motion, the plaintiffs' attorneys submitted contemporaneous billing records. These records were detailed and, given the presumption of reasonableness that accompanies compliant records, the plaintiff is entitled to fees for time spent on the Motion for Attorneys' fees. *See Jackson*, 696 F. Supp. 2d at 101. Those records did not include entries for time spent preparing the plaintiff's reply to its Motion for Attorneys' fees. *See* Pl.'s Reply at 13. The plaintiff later submitted contemporaneous billing records for six hours spent by attorney Stamboulieh for the time spent on the reply. *See* Pl.'s Response Min. Order, Ex. 1, Decl. of Stephen D. Stamboulieh ("Stamboulieh Supp. Decl.") ¶¶ 4–8, ECF No. 39-1; Pl.'s Response Min. Order, Ex. 2, Decl. of Alan Alexander Beck ("Beck Supp. Decl.") ¶¶ 3–9, ECF No. 39-2.[4] Consequently, the attorneys' records reflect 25.4 hours spent on the Motion for Attorneys' Fees (18 by Stamboulieh and 7.4 by Beck), and 6 hours spent by attorney Stamboulieh on the reply brief. This amounts to $11,988.60 ($9,480.00 for Stamboulieh and $2,508.60 for Beck).

Courts in this district commonly award the applicant "the same percentage of fees for fee litigation as it does for fees on the merits." *Elec. Privacy Info. Ctr.*, 982 F. Supp. 2d at 61; *see also Judicial Watch*, 878 F. Supp. 2d at 241 ("[T]he Court must reduce Judicial Watch's requested fees on fees award commensurate with the Court's reduction of Judicial Watch's

---

[4] The plaintiff attempts to "estimate" and "recreate" additional time spent on the reply, Stamboulieh Supp. Decl. ¶¶ 6–8, Beck Supp. Decl. ¶¶ 4–8, but in this circuit, fee applications must "include contemporaneous time records of hours worked and rates claimed, plus a detailed description of the subject matter of the work with supporting documents," *In re Donovan*, 877 F.2d 982, 994 (D.C. Cir. 1989) (per curiam); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982) ("[C]asual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees. Attorneys who anticipate making a fee application must maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney."). Thus, attorneys' fees on the reply are limited to those hours for which the requisite records are submitted.

award for the litigation of this case."). Here, the plaintiff originally requested $37,019.10 for fees on the merits; as discussed, the plaintiff will be awarded $14,850.60, which amounts to a 59.9 percent reduction. The same reduction will be applied to the plaintiff's fee request for fee litigation. Imposing the 59.9 percent reduction as discussed above, this amounts to $4,809.35 in fees on fees ($3,803.00 for Stamboulieh and $1,006.35 for Beck).

## IV. CONCLUSION

For the reasons discussed above, the plaintiff is eligible for and entitled to attorneys' fees and costs in the total amount of $20,095.95 from OIG, which amount includes $436 in costs, $14,850.60 for attorney's fees, and $4,809.35 in fees on fees. The plaintiff is not eligible for fees from ATF. Accordingly, the plaintiff's Motion for Attorneys' Fees and Costs, ECF No. 36, is granted in part and denied in part. An appropriate Order accompanies this Memorandum Opinion.

Date: November 9, 2017

_____
BERYL A. HOWELL
United States District Judge